IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER P. WHITE, | No. 4:22-CV-01692 |
| Plaintiff, | (Chief Judge Brann) |
| v. | (Chief Magistrate Judge Bloom) |
| TYSON HAVENS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 31, 2025

## I. BACKGROUND

In March 2024 Christopher P. White filed a second amended complaint raising claims against numerous defendants for malicious prosecution, conspiracy to maliciously prosecute White, and violations of his due process rights under the Fourteenth Amendment to the United States Constitution related to his arrest for, and later acquittal of, certain criminal charges.[1] Following a motion to dismiss, the Honorable Christopher C. Conner[2] narrowed White's claims to only a claim for malicious prosecution against Lycoming County Narcotics Enforcement Unit ("NEU") Detective Jonathan Rachael and a civil conspiracy claim against Rachael, NEU Detective Tyson Havens, NEU Detective Curt Loudenslager, NEU Detective

---

[1] Doc. 79.
[2] Judge Conner later retired as a Judge of this Court, and this case was reassigned to the undersigned on January 21, 2025.

Michael A. Caschera, III, and former Lycoming County Chief County Detective Michael Simpler.[3]

The remaining defendants thereafter filed a motion for summary judgment.[4] They contend that White's malicious prosecution claim fails because (1) the charges against him were supported by probable cause, and (2) there is no evidence of malice in bringing the criminal charges.[5] Defendants further argue that White's conspiracy claim fails because the malicious prosecution claim fails, and because there is no evidence of an agreement to maliciously prosecute White.[6] Finally, they assert that they are entitled to qualified immunity.[7]

In November 2025, Chief Magistrate Judge Daryl F. Bloom issued a report and recommendation in which he recommends that this Court grant Defendants' motion for summary judgment.[8] Chief Magistrate Judge Bloom eschews examining the issue of probable cause and instead recommends concluding that White presents no evidence of malice to support his claim of malicious prosecution.[9] He further recommends finding that, because White's malicious prosecution claim fails, his conspiracy claim also fails as a matter of law.[10]

---

[3]  Doc. 111.
[4]  Doc. 129.
[5]  Doc. 131 at 12-19.
[6]  *Id.* at 19-23.
[7]  *Id.* at 23-25.
[8]  Doc. 144.
[9]  *Id.* at 8-10.
[10] *Id.* at 10-11.

White filed objections to the Report and Recommendation,[11] raising two objections.[12] First, White argues that a reasonable jury could find that malice is present based on his declaration stating that the underlying alleged drug transaction never happened.[13] Second, he contends that the conspiracy claim should likewise proceed on the basis of his declaration and the fact that the malicious prosecution claim should survive.[14]

Defendants have filed a response[15] and this matter is now ripe for consideration. For the following reasons, the Court concludes that White's claim for malicious prosecution should survive, but will grant judgment in Defendants' favor as to the conspiracy claim.

## II. FACTS

There are precious few undisputed facts related to the pending motion for summary judgment. What is clear is that, in September 2024, Rachael filed a criminal complaint in state court charging White with possession with the intent to deliver a controlled substance, felony delivery of a controlled substance, and

---

[11] White's objections were filed beyond the fourteen-day period for timely objections, but he filed a timely motion for an extension of time to file his objections. *See* Docs. 145, 146. This Court will grant the motion for an extension of time and, because White therefore filed timely objections, those portions of the Report and Recommendation to which he objects are reviewed *de novo*. *Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).
[12] Doc. 146.
[13] *Id.* at 3-4.
[14] *Id.* at 4.
[15] Doc. 147.

possession of a controlled substance.[16] White was later tried in state court; at trial only Rachael testified for the prosecution, and White was acquitted of the charges against him.[17] The basis of those charges, however, is very much in dispute.

Defendants assert that, on January 15, 2019, Rachael attempted to purchase drugs from White at a restaurant.[18] However, no sale was completed because "Rachael refused to do drugs in front of White."[19] Approximately two weeks later, on January 29, 2019, in a separate investigation, Havens utilized a confidential informant ("CI") to attempt to purchase drugs from White.[20]

Defendants aver that, on the day of the arranged transaction, White "repeatedly changed meeting locations, which made surveillance difficult."[21] The purchase was later confirmed to occur at a particular convenience store, and five NEU detectives—Rachael, Havens, Loudenslager, Caschera, and Simpler—positioned themselves near that location to conduct surveillance.[22] On his way to the convenience store, Loudenslager observed White walking toward that location and informed the rest of the detectives of that fact.[23]

---

[16] Doc. 130 ¶ 41.
[17] Curiously, Defendants include no information about the prosecution in their statement of facts. These facts are therefore derived from Defendants' brief in support of their motion, Doc. 131 at 9, and the publicly available docket for that criminal matter.
[18] Doc. 130 ¶¶ 27, 28.
[19] *Id.* ¶ 28.
[20] *Id.* ¶¶ 18-20.
[21] *Id.* ¶ 21.
[22] *Id.* ¶¶ 19, 22.
[23] *Id.* ¶¶ 23-24.

Rachael and Havens were parked in the convenience store parking lot, with Havens being closest to the CI's vehicle, while the remainder of the detectives were parked in various locations where they could maintain a visual of the CI's vehicle.[24] Rachael asserts that he observed White walking toward Rachael's truck and White "unexpectedly" entered Rachael's vehicle rather than the CI's vehicle.[25] Although surprised, Rachel used $100—the exact cost of the drugs that the CI had arranged to buy from White—of prerecorded money that he carried on him at all times to complete the transaction with White.[26] In exchange for the money, White provided Rachael with what laboratory testing later confirmed to be .59 grams of cocaine.[27] Because the other detectives who conducted surveillance were "focused on the CI's vehicle," none witnessed the transaction or even witnessed White enter Rachael's truck, and were only made aware of what had happened when Rachael informed them of the transaction after the fact.[28]

White's story is simple, but far different from that of Defendants. He asserts that, on January 15, 2019, he was at a party at a restaurant; when he walked outside of the restaurant he was approached by Rachael and an individual who was operating

---

[24] *Id.* ¶ 22; Doc. 130-2 ¶ 10; Doc. 130-3 ¶ 12.
[25] Doc. 130 ¶ 31; *see id.* ¶¶ 25-30.
[26] *Id.* ¶ 35; Doc. 130-2 ¶ 20.
[27] Doc. 130 ¶¶ 36, 38.
[28] *Id.* ¶ 32. *See* Doc. 130-3 ¶¶ 14-15; Doc. 130-4 ¶¶ 8-9; Doc. 130-5 ¶¶ 15-16; Doc. 130-6 ¶¶ 10-11; *see* Doc. 139. The Court sees no basis to exclude any of the declarations, and White's motions to strike will therefore be denied.

as Rachael's CI.[29] Rachael and the CI attempted to convince White to become a CI and purchase drugs from someone inside the restaurant, but White refused.[30] White never discussed selling drugs to Rachael, nor did he ask Rachael to do drugs.[31]

White did not see Rachael again until September 24, 2019, when Rachael arrested White on the underlying state court criminal charges.[32] This arrest occurred, White avers, in retaliation for White refusing to be a CI for Rachael.[33] All evidence of any January 29, 2019, sale of drugs from White to Rachael is, White asserts, fabricated and false.[34] In short, White asserts that "Rachael lied" about White having sold cocaine on January 29, 2019.[35]

## III. DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[37] A defendant "meets this

---

[29] Doc. 135-1 ¶ 1.
[30] *Id.*
[31] *Id.* ¶ 6.
[32] *Id.* ¶ 3.
[33] *Id.* ¶ 5.
[34] *Id.* ¶ 4.
[35] *Id.* ¶ 7; *see id.* ¶ 10.
[36] Fed. R. Civ. P. 56(a).
[37] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).

standard when there is an absence of evidence that rationally supports the plaintiff's case."[38] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[39]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[40] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[41] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[42] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[43]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[44] the Court "must view the facts and evidence presented on the motion in the light most favorable to the

---

[38] *Clark*, 9 F.3d at 326.
[39] *Id.*
[40] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[41] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[42] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[43] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (internal quotation marks omitted).
[44] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

nonmoving party."[45] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[46] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[47]

### A. Malicious Prosecution

The Court first analyzes White's malicious prosecution claim. To establish his claim for malicious prosecution, White must demonstrate five elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[48]

There is no dispute as to three of the five elements: Rachael initiated the criminal proceeding against White, the criminal proceeding ended in White's favor, and White suffered a deprivation of his liberty when he was arrested. Therefore, the Court focuses only on the question of probable cause and whether the criminal proceeding was initiated with malice.

---

[45] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[46] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[47] Fed. R. Civ. P. 56(c)(3).
[48] *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (brackets and internal quotation marks omitted).

Although probable cause is generally an issue reserved for the factfinder, the Court addresses that question first because, as explained later, that inquiry is inextricably intertwined with the question of malice. "Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."[49] "Probable cause 'is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'"[50]

Here, White was charged with three criminal offenses in state court: (1) possession with the intent to distribute a controlled substance, in violation of 35 Pa. Stat. § 780-113(a)(30); (2) delivery of a controlled substance, in violation of 35 Pa. Stat. § 780-113(a)(30); and (3) possession of a controlled substance, in violation of 35 Pa. Stat. § 780-113(a)(16).[51] While these offenses have different elements, they all share one: White must have, among other things, possessed a controlled substance to be guilty of any of those offenses.

On summary judgment the Court is presented with two conflicting accounts. Rachael presents a detailed narrative where White plainly possessed a controlled

---

[49] *Karns v. Shanahan*, 879 F.3d 504, 523 (3d Cir. 2018) (internal quotation marks omitted).
[50] *United States v. Alexander*, 54 F.4th 162, 171 (3d Cir. 2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).
[51] Doc. 130-7 at 3.

substance and sold that controlled substance to Rachael.[52] However, only one other individual even saw White on the day of the alleged transaction: Loudenslager witnessed White walking toward the convenience store, but did not see White on the grounds of the store, in Rachel's vehicle, or sell a controlled substance to Rachael.[53] White presents a competing declaration stating that the transaction never occurred and he never sold controlled substances to Rachael.[54]

While Defendants assert that "[c]learly, probable cause existed for all three charges," they are utilizing an incorrect framework to suggest that conclusion.[55] The question is not whether, taking Rachael's affidavit as true, he had probable cause to pursue criminal charges against White. If it were, then summary judgment would plainly be appropriate. Rather, under the summary judgment standard, this Court must assess if there is a genuine issue of material fact as to whether a jury could conclude that Rachael possessed probable cause to pursue criminal charges against White.

Viewed through that prism, a genuine issue of material fact precludes judgment in Defendants' favor, as this Court is presented with a classic case of competing declarations. No physical evidence—such as photographs or video recordings—solidly rebuts either Rachael's declaration or White's declaration. To

---

[52] *See* Doc. 130-2.
[53] Doc. 130-5.
[54] *See* Doc. 135-1.
[55] Doc. 131 at 16.

find in Defendants' favor on their motion would require the Court to exercise its own judgment to find Rachael more credible than White, which this Court cannot do.

The United States Court of Appeals for the Third Circuit has found summary judgment unwarranted in similar circumstances. In the unpublished decision of *Gentles v. Borough of Pottstown*, the Third Circuit examined whether the District Court properly granted summary judgment in the defendant's favor as to a claim for malicious prosecution.[56] There, the plaintiff had been charged with disorderly conduct, which criminalizes actions when an individual "'makes unreasonable noise' with the intention of causing 'public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.'"[57] The Third Circuit observed that:

> A factual dispute exists as to the volume of Gentles's speech. Portock reported that Gentles created a disturbance that caused people in the neighborhood to come out of their homes while Gentles testified that people in the neighborhood were already outside when the incident began, that he never became belligerent, and that the police's conduct, as opposed to his own, is what grabbed people's attention. In light of Gentles's testimony, a jury could reasonably find Portock lacked probable cause to believe that Gentles had made unreasonable noise. The District Court therefore erred in granting Portock summary judgment on this claim.[58]

This is, of course, a straightforward application of the summary judgment standard, and the same natural result flows here. Were a jury to credit White's version of events, it would conclude that he did not possess, let alone distribute,

---

[56] No. 22-2925, 2025 WL 2082645, at *4 (3d Cir. July 24, 2025).
[57] *Id.* (quoting 18 Pa. Stat. and Cons. Stat. § 5503(a)(2)).
[58] *Id.* (internal citations and quotation marks omitted).

controlled substances as alleged and, therefore, Rachael lacked probable cause to pursue criminal charges against White.

This leads directly to the remaining element of a malicious prosecution claim—malice. It is well-established that a factfinder may infer malice "from the absence of probable cause."[59] If the jury were to credit White's testimony and discredit Rachael's, it could easily conclude that Rachael's actions were malicious, as (1) there was no probable cause to charge White with a crime, and (2) Rachael falsified testimony and a police report with the sole motive of charging White with a crime.

In sum, were a jury to believe White's testimony, it could reasonably determine that he has established all elements of his malicious prosecution claim. Consequently, the Court must deny the motion for summary judgment as to that claim.

### B. Conspiracy

However, the Court adopts the portion of the Report and Recommendation with respect to White's civil conspiracy claim and will grant summary judgment in Defendants' favor as to that claim. The Third Circuit has held that, to establish a claim for civil conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate

---

[59] *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). *See also Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988) ("Malice may be inferred from the absence of probable cause").

that "the object of the conspiracy was the deprivation of a federally protected right" in addition to demonstrating "the existence of the elements of a conspiracy: agreement and concerted action."[60]

Here, there is simply no evidence of any concerted action between Defendants. Rachael was the only defendant to testify at White's trial.[61] More importantly, while multiple law enforcement personnel were present at the convenience store when White is alleged to have sold narcotics to Rachael, Rachael is the only person who states that a drug transaction occurred, or even that White entered Rachael's vehicle.[62] The closest any of the others come to supporting Rachael's testimony is Loudenslager's statement that he witnessed White walking in the direction of the convenience store.[63] But he does not state that he witnessed White even arrive at the convenience store, let alone enter Rachael's vehicle or sell narcotics.[64] In short, no Defendant other than Rachael provided any information that contributed to White's prosecution.

Absent any evidence that Defendants took concerted action to maliciously prosecute White, his conspiracy claim cannot stand. Consequently, summary judgment will be entered in Defendants' favor as to this claim.

---

[60] *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (internal quotation marks omitted).
[61] Doc. 131 at 14 n. 1.
[62] *See* Doc. 130-3; Doc. 130-4; Doc. 130-5; Doc. 130-6; Doc. 139.
[63] Doc. 130-5 at 2.
[64] *Id.* at 2-5.

### C. Qualified Immunity

Finally, Defendants argue that, at a minimum, they are entitled to qualified immunity on the claims against them.[65] This Court will therefore examine whether Rachael is entitled to qualified immunity with respect to White's claim of malicious prosecution.[66]

> Qualified immunity shields government officials, including law enforcement, from liability unless their conduct violates a clearly established right. When assessing qualified immunity, [the] inquiry is two-fold: (1) whether the plaintiff sufficiently alleged a right had been violated, and (2) whether that right was clearly established when it was allegedly violated to the extent that it would have been clear to a reasonable person that his [or her] conduct was unlawful.[67]

"The 'clearly established' test ensures that government officials are not liable unless they had reasonable notice that their conduct would be considered unlawful."[68] At summary judgment, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."[69]

Judged under those standards, the Court cannot conclude that qualified immunity is proper at this time. As discussed above, there is a genuine issue of material fact as to whether Rachael falsified reports and testimony to prosecute White. Viewing the facts in the light most favorable to White, then, the question is

---

[65] Doc. 131 at 23-25.
[66] Because the Court will grant judgment in Defendants' favor as to White's conspiracy claim, it need not examine whether they are entitled to qualified immunity for that claim.
[67] *Evans v. Newark City*, 152 F.4th 537, 544 (3d Cir. 2025) (internal quotation marks omitted).
[68] *Id.* at 544-45.
[69] *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002).

whether such actions violated White's civil rights, and whether it was clearly established that those actions violated his rights.

The Court must conclude that such actions, if true, violated White's rights. Moreover, those rights were clearly established at the time that the events of relevance in this case occurred, and a reasonable individual would have understood that such actions were improper.[70] The Court therefore cannot apply qualified immunity at this time.

## IV.   CONCLUSION

For the foregoing reasons, the Court will reject in part and adopt in part Chief Magistrate Judge Bloom's Report and Recommendation. It will therefore grant in part and deny in part the motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[70] *See Evans*, 152 F.4th at 546 ("Viewing the facts in the light most favorable to Evans, Appellants violated Evans's constitutional right by arresting and prosecuting him without probable cause. Existing caselaw clearly establishes and recognizes that right"). *See also United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011) ("the idea of a police officer fabricating facts or even entire affidavits in order to obtain probable cause is quite obviously repugnant to the Fourth Amendment").